IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NATIONAL VIATICAL, INC.,
GROVER T. and DORIS E.
MITCHELL, and JOHN and
JANE DOE 1-100,

      Plaintiffs,

       v.

HON. JOHN OXENDINE
individually and in his official capacity
as Insurance Commissioner of
Georgia,

      Defendant.

CIVIL ACTION FILE
NO. 1:05-CV-3059-TWT

ORDER

      This is a constitutional challenge to the Georgia Life Settlements Act, O.C.G.A.

§ 33-59-1 *et seq.*  It is before the Court on the Defendant's Motion to Dismiss [Doc.

15.] For the reasons set forth below, the Defendant's motion is GRANTED.

I. BACKGROUND

      In 2005, the Georgia General Assembly enacted the Georgia Life Settlements

Act, O.C.G.A. § 33-59-1 *et seq.*  The stated intent in enacting this law was:

      [T]o provide for the protection of contractual and property rights of a life
      insurance policy owner to seek a life settlement; to establish consumer

protections by providing for the regulation of a life settlement transaction; to provide for the licensing and regulation of a life settlement provider and others involved in a life settlement transaction; to provide for antifraud measures.

Life Settlements Act, 2005 Ga. Laws 326.  The Life Settlements Act is based on model legislation drafted by the National Association of Insurance Commissioners. Variants of this model have been enacted by 37 other states.  [Doc. 9, Ex. B.]

On December 1, 2005, this lawsuit challenging the Life Settlements Act was filed against John Oxendine, the Georgia Commissioner of Insurance.  In the original complaint, the only Plaintiff listed was National Viatical, Inc. ("NVI"), a for-profit corporation organized under the laws of Georgia.  Its business consists of buying life insurance policies on the secondary market at a discounted rate and either holding the policies until the face value can be realized or reselling the policies for a profit.  An amended complaint filed on December 20, 2005, added Plaintiffs Grover and Doris Mitchell and John and Jane Does 1-100.  The Mitchells are residents of Lee County, Georgia.  Mr. Mitchell owns two life insurance policies for which he and his wife can no longer afford to pay the premiums.  The Does are described as owners of insurance policies who wish to sell those policies to the highest bidder.

The Plaintiffs allege violations of the following constitutional provisions: (1) the Commerce Clause; (2) the Contracts Clause; (3) the Fifth Amendment Takings Clause; (4) the Supremacy Clause; (5) Fifth and Fourteenth Amendments vagueness

claims; and (6) Fifth and Fourteenth Amendments due process claims. The Plaintiffs previously moved for a temporary restraining order or preliminary injunction enjoining the Defendant's enforcement of the Life Settlements Act. The motion was denied by this Court [Doc. 14]. The Defendant now moves to dismiss all claims.

## II.  MOTION TO DISMISS STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed. R. Civ. P. 12(b)(6); see Conley v. Gibson, 355 U.S. 41, 47 (1957); Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id.[1]

## III. DISCUSSION

---

[1]Although the Plaintiffs have filed affidavits, the Defendant does not rely upon materials outside of the pleadings. There are no disputed facts. Therefore, it is appropriate to address the legal issues presented in a Rule 12(b)(6) Motion to Dismiss.

A. <u>Anonymous Plaintiffs</u>

In their amended complaint, the Plaintiffs have attempted to add John and Jane Does 1-100.  Federal Rule of Civil Procedure 10(a) requires every party to be named in the complaint, unless the court finds that certain conditions are met.  In order to proceed anonymously under a pseudonym, a plaintiff must demonstrate "a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." <u>Roe v. Aware Woman Center for Choice, Inc.</u>, 253 F.3d 678, 685 (11th Cir. 2001); <u>see also</u> <u>Doe v. Frank</u>, 951 F.2d 320, 323 (11th Cir. 1992).  These Plaintiffs – if they exist – have not filed a motion to proceed under a fictitious name, nor have they offered any substantial privacy right that would prevent them from disclosing their names.  The Court thus concludes that these unnamed Plaintiffs cannot be added through this amended complaint.

B. <u>Constitutional Challenges</u>

1. <u>Commerce Clause</u>

The Plaintiffs first claim that this statute violates the Commerce Clause.  <u>See</u> U.S. Const. art. I, § 8.  The Commerce Clause "prohibits economic protectionism--that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." <u>New Energy Co. of Indiana v. Limbach</u>, 486 U.S. 269, 273 (1988).  However, this Court need not perform a substantive analysis of this claim, as

it has already determined that "[s]tate laws regulating the business of insurance are insulated from Commerce Clause challenges by the McCarran-Ferguson Act, 15 U.S.C. § 1012. <u>See</u> <u>Western & Southern Life Ins. Co. v. State Bd. of Equalization</u>, 451 U.S. 648, 652-5 (1981)." [Doc. 14, at 3.]  In enacting the McCarran-Ferguson Act, Congress was concerned with the relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement. These were the core of the "business of insurance." <u>Union Labor Life Ins. Co. v. Pireno</u>, 458 U.S. 119, 128 (1982).  The Georgia Life Settlements Act regulates these core aspects of the business of insurance.  In any event, the Plaintiffs have failed to show that the Act favors in-state interests over out-of-state interests.  The Plaintiffs' Commerce Clause challenge is dismissed.

2. <u>Contracts Clause</u>

The Plaintiffs next claim that the Act unconstitutionally interferes with their right of contract.  The Constitution provides that "[n]o State shall pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10.  The three factors to consider when assessing a potential Contracts Clause violation are: "(1) whether the law substantially impairs a contractual relationship; (2) whether there is a significant and legitimate public purpose for the law; and (3) whether the adjustments of rights and responsibilities of the contracting parties are based upon reasonable conditions

and are of an appropriate nature." <u>Vesta Fire Ins. Corp. v. State of Fla.</u>, 141 F.3d 1427, 1433 (11th Cir. 1998).  Here, the Plaintiffs claim that their contractual ability to buy and sell viatical policies has been restricted by this law because they can only sell the policy "to licensed entities and must obtain a license to buy from certain sellers."  (Pls.' Resp. to Def.'s Mot. to Dismiss, at 25.)

The Court finds that the Eleventh Circuit's holding in <u>Vesta Fire Ins. Corp.</u>, 141 F.3d at 1433, conclusively determines the outcome here.  There, the plaintiffs, residential insurance providers, challenged the constitutionality of a Florida law that prohibited them from entirely withdrawing from the Florida insurance market.  The Eleventh Circuit first found that the law did work a substantial impairment on the plaintiffs because it forced them to continue contractual relationships that otherwise could have rightfully been terminated.  <u>Id.</u> at 1433.  But the court determined that the state had a significant and legitimate public purpose in stabilizing the Florida economy.  Finally, in assessing whether this adjustment of rights and responsibilities was reasonable, the court stated that "[u]nless the State itself is a contracting party ... courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."  <u>Id.</u> at 1434 (<u>quoting</u> <u>Energy Reserves Group, Inc. v. Kansas Power and Light Co.</u>, 459 U.S. 400, 413 (1983)).  The court found no violation of the Contracts Clause.

Here, NVI's alleged impairment is significantly less burdensome than that of the plaintiffs in <u>Vesta Fire Ins</u>.  The plaintiffs there were forced to remain in a contract against their will.  The only effect the Life Settlements Act has on NVI in this case is that it restricts the company's ability to buy and sell policies.  The law does not, however, require them to buy or sell to a particular customer, nor force them to remain in a contractual relationship.  Secondly, as in <u>Vesta Fire Ins.</u>, the State of Georgia has demonstrated a significant and legitimate public purpose for this law.  Its stated aim is to both protect the seller of viatical policies and prevent fraud.  Under the principles established by the Supreme Court in <u>Energy Reserves Group, Inc.</u>, this Court must defer to the judgment of the General Assembly.  The Court, therefore, finds that no Contracts Clause violation has occurred and dismisses this challenge.

      3. <u>Takings Clause</u>

The Fifth Amendment provides in pertinent part: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.  Through the Fourteenth Amendment, this also applies to the States.  <u>See</u> <u>Penn Cent. Transp. Co. v. City of New York</u>, 438 U.S. 104, 121-23 (1978).  A regulation that denies all economically beneficial or productive use of land is a taking that requires compensation. <u>Lucas v. South Carolina Coastal Council</u>, 505 U.S. 1003, 1015 (1992).  But:

> Where a regulation places limitations on [property] that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the [property owner], the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action.

Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001); see also Penn Cent. Transp. Co., 438 U.S. at 124.

Here, the Plaintiffs appear to allege that the Act is a per se taking of their vested right to sell their policies to whomever they choose. (Pls.' Resp. to Def.'s Mot. to Dismiss, at 22.) In order to support such a claim, however, the Plaintiffs must allege that they have been deprived of all economically beneficial use of their property. See Lucas, 505 U.S. at 1015. The Plaintiffs allege only that the Life Settlements Act shrinks the pool of available purchasers, thus driving down the price. This does not constitute a per se taking.

They also have not alleged facts sufficient to demonstrate a regulatory taking. They discuss the economic impact of the law. They claim that the Life Settlements Act reduces the number of eligible and willing purchasers, thus reducing competition and lowering prices. (Amended Compl., ¶¶ 71-77.) However, they fail to demonstrate how this regulation interferes with their reasonable investment-backed expectations. This factor is generally implicated where a government regulation affects a company or individual's economic expectations in a way that could not have

been anticipated by prior legislation.  <u>Vesta Fire Ins. Corp.</u>, 141 F.3d at 1432 (<u>citing</u>

<u>Connolly v. Pension Ben. Guar. Corp.</u>, 475 U.S. 211, 226-228 (1986)).  The Plaintiffs

make no claim in this regard.

     Finally, the State of Georgia has shown a strong interest in enforcing this

regulation.  The nature of a state's interest is "critical in determining whether a taking

has occurred.  When important public interests are served, a taking is less likely to

have occurred."  <u>Vesta Fire Ins. Corp.</u>, 141 F.3d at 1433.  A taking is unlikely to be

found, moreover, where the state is merely adjusting the benefits and burdens to

promote the common good.  <u>See</u> <u>Penn Cent. Transp. Co.</u>, 438 U.S. at 124.  Among its

purposes, the Life Settlements Act is intended to: (1) "provide for the protection of

contractual and property rights of a life insurance policy owner to seek a life

settlement"; (2) to "establish consumer protections by providing for the regulation of

a life settlement transaction"; and (3) to "provide for antifraud measures."  Life

Settlements Act, 2005 Ga. Laws 326.  These strong governmental interests, combined

with the Plaintiffs' failure to claim any significant economic impact or reasonable

economic backed expectations in this property, demonstrates a failure by the Plaintiffs

to state a claim upon which relief can be granted.  The Court thus concludes that a

regulatory taking has not occurred and grants the Defendant's motion to dismiss

Count 3.

4. <u>Supremacy Clause</u>

The Plaintiffs assert in Counts 4 and 7 that the Act is preempted by Federal Antitrust laws and the Federal Trade Act, thus making it a violation of the Supremacy Clause. <u>See</u> U.S. Const. art. VI, para. 2. In response to the Defendant's motion, they argue only that the Life Settlements Act stands as a per se violation of section 1 of the Sherman Act. 15 U.S.C. § 1. The Court deems this failure to be an abandonment of the Federal Trade Act claim. <u>See</u> <u>City of Lawrenceville v. Ricoh Electronics, Inc.,</u> 370 F. Supp. 2d 1328, 1333 (N.D. Ga. 2005). As to Count 4, in the McCarran-Ferguson Act, Congress specifically insulated state laws regulating the business of insurance from antitrust law challenges. 15 U.S.C. § 1012. <u>See</u> <u>Barnett Bank of Marion County, N.A. v. Nelson</u>, 517 U.S. 25, 40 (1996). The Defendant's motion on both Counts 4 and 7 is therefore granted.

5. <u>Vagueness</u>

The Plaintiffs next allege that certain terms and sections of this statute are so unclear as to violate constitutional guarantees of due process. Normally, commercial statutes such as the Life Settlements Act are "impermissibly vague only if they provide no rule or standard at all. Uncertainty ... is not enough for [the commercial regulatory statute] to be unconstitutionally vague; rather, it must be substantially incomprehensible." <u>Cotton States Mut. Ins. Co. v. Anderson</u>, 749 F.2d 663, 669 (11th

Cir. 1984) (citations and punctuation omitted).  Because this statute imposes criminal penalties, however, the Court finds that it operates like a criminal statute.  <u>See</u> O.C.G.A. § 33-59-13(f)(2)(a) (imposing sanctions for violation of the Life Settlements Act of up to 20 years in prison or a fine of up to $100,000).  A penal law is unconstitutionally vague "if it fails to 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" <u>U.S. v. Hasner</u>, 340 F.3d 1261, 1269 (11th Cir. 2003) (<u>quoting</u> <u>Kolender v. Lawson</u>, 461 U.S. 352 (1983)).  Because this challenge is not based on the First Amendment, it "must be evaluated in light of the facts of the individual case before the court; in other words, the statute is judged on an 'as applied' basis." <u>U.S. v. Edgar</u>, 304 F.3d 1320, 1327 (11th Cir. 2002) (<u>quoting</u> <u>Maynard v. Cartwright</u>, 486 U.S. 356, 361 (1988)).  Here, the Plaintiffs challenge several different sections of the Life Settlements Act but provide no set of facts to demonstrate how this statute is unclear as applied to them.  Because they have failed to plead facts sufficient to state a claim, Count 5 is dismissed without prejudice.

   6. <u>Due Process</u>

  The Plaintiffs make several claims in Count 6 regarding the Life Settlements Act's alleged violation of their due process rights.  In their complaint, they allege that

the Life Settlements Act violates: (1) the Georgia Administrative Procedures Act ("the APA"); (2) their right against self incrimination; and (3) their general due process rights. The Defendant has moved to dismiss all of these claims, and the Plaintiffs respond only in support of their claim that the Life Settlements Act does not comply with the APA, indicating that they do not oppose the motion as to the other claims. L.R. 7.1(B). The Court thus dismisses these claims and addresses only the alleged APA violation.

Under the Life Settlements Act, the Insurance Commissioner may conduct an examination of any licensee without a hearing and, where that examination reveals a violation, order the company to take any actions he deems necessary and appropriate to cure that violation. O.C.G.A. § 33-59-7(d)(3)(A). The Plaintiffs claim that this is not in compliance with the APA's requirement that, in any contested case, all parties be "afforded an opportunity for hearing." O.C.G.A. § 50-13-13 (a)(1). However, before the Court can address such a challenge, it must determine whether the Plaintiffs' claim is "ripe" for review. U.S. Const. art. III, § 2; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992). The purpose of this "ripeness" doctrine is to avoid entangling a court "in abstract disagreements, and also to shield agencies from judicial interaction until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Konikov v. Orange County, Fla.,

410 F.3d 1317, 1322 (11th Cir. 2005) (citations and punctuation omitted).  A plaintiff

challenging a governmental action must show that he "has sustained, or is in

immediate danger of sustaining, a direct injury as the result of that act."  National

Advertising Co. v. City of Miami, 402 F.3d 1335, 1339 (11th Cir. 2005).  Here,

Plaintiff NVI makes no allegation of any injury from the Life Settlements Act.  It does

not claim that the Insurance Commissioner has even conducted an examination of it,

much less that it has been ordered to cure any violation.  This claim is thus not ripe

for review by this Court and must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Defendant's Motion to Dismiss [Doc. 15]

is GRANTED.  Counts 1, 2, 3, 4, and 7 are DISMISSED with prejudice.  Count 5, the

vagueness challenge, and Count 6 are DISMISSED without prejudice.

SO ORDERED, this 20 day of April, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge


T:\ORDERS\05\National Viatical\mtdtwt.wpd           -13-